UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JUDY KEHOE                                              CIVIL ACTION

VERSUS                                                  NO. 05-2139

RYDER TRUCK RENTAL, INC. ET AL.                         SECTION F

ORDER AND REASONS

Before the Court is the defendant Unum's Motion for Summary Judgment.  For the reasons that follow, the Motion is GRANTED.

**Background**

Michael Kehoe was an employee of Ryder Truck Rental.  He was covered by the Ryder System employee welfare benefit plan, which provided coverage for short-term disability, long-term disability, and life insurance.

On November 15, 2003, Mr. Kehoe was diagnosed with prostate cancer.  As a result, he filed a claim with the Ryder plan for short-term and long-term disability benefits.  In November 2003, Mr. Kehoe began receiving short-term disability benefits, and in May 2004, Mr. Kehoe's claim for long-term disability was approved.  Pursuant to the Ryder plan, Mr. Kehoe also had the option of purchasing life insurance, which was underwritten by the defendant, Unum Life Insurance Company.  From January 2001 to December 2003,

1

Mr. Kehoe elected "no coverage additional life insurance."[1] In December 2003, following his diagnosis of prostate cancer and his application for long-term disability benefits, Mr. Kehoe elected "additional life insurance 2 x the earning" in the amount of $148,000, with a prospective start date of January 1, 2004. Beginning January 30, 2004, Ryder began withdrawing premiums from Mr. Kehoe's paychecks, which reflected the supplemental life insurance coverage.[2]

In May 2004, Mr. Kehoe died of complications resulting from his cancer. Judy Kehoe, Mr. Kehoe's beneficiary under the Ryder plan, submitted a claim for life insurance benefits. On July 12, 2004, Unum notified Mrs. Kehoe that her claim for basic life insurance coverage, in the amount of $74,000, was approved. But on August 3, 2004, Ryder notified Mrs. Kehoe that her claim for supplemental life benefits, in the amount of $148,000, was denied because Mr. Kehoe did not "return to work" following his election of supplemental life insurance benefits or timely provide "evidence of insurability," as required by the Plan.

Mrs. Kehoe appealed Ryder's denial of supplemental benefits to Unum, the underwriter and claims administrator of the Ryder plan,

---

[1] Pursuant to this election, Mr. Kehoe received $74,000 in life insurance coverage (the equivalent of his annual salary).

[2] As the insurer and claims administrator, Unum was not responsible for deducting premiums from employee paychecks. Ryder, who has been dismissed, collected the premiums. No claim for premiums has been made.

contending that she "justifiably relied on the actions of [Unum's] agent, Ryder Truck Rental, Inc., when the company began deducting premium [*sic*] for the additional life insurance beginning with Michael Kehoe's January 30, 2004 paycheck." In order to review Mrs. Kehoe's claim, Unum requested information from Fidelity, the Ryder Plan Administrator, relating to Mr. Kehoe's election of coverage. Following a review of the evidence in the administrative record, Unum determined that Mrs. Kehoe was not entitled to supplemental life benefits because her husband did not return to active employment following his election of additional coverage or submit evidence of insurability, as required by the terms of the plan.

Judy Kehoe sued Ryder Truck Rental, Inc., Fidelity Investments Institutional Operations Company, Inc., and Unum Life Insurance Company, seeking recovery of supplemental death benefits pursuant to her husband's life insurance policy. Mrs. Kehoe contended that she was wrongfully denied full payment of death benefits by Ryder, her husband's employer; Fidelity, a fiduciary of the Ryder plan with various plan administrative duties; and Unum, the insurer and claims administrator of Ryder's group life insurance policy.[3] The sole remaining defendant, Unum, now moves for summary judgment, contending that the administrative record conclusively establishes

---

[3] Following this Court's entry of a bar order, Mrs. Kehoe, Ryder, and Fidelity entered into a settlement agreement and Ryder and Fidelity were dismissed from the suit.

that Unum did not abuse its discretion in denying Mrs. Kehoe's claim for benefits.

### I.  Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with

competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## II.

### A.  Standard of Review

The Ryder plan in this lawsuit is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.  See Docket Number 36, Order of April 19, 2006.  As such, this Court has the discretionary authority to review Unum's decision to deny supplemental life insurance benefits to Mrs. Kehoe.  See Chapman v. Prudential Life Ins. Co. of Amer., 267 F. Supp. 2d 569, 575-76 (E.D. La. 2003).

When reviewing a denial of benefits made by an ERISA administrator, this Court should apply a *de novo* standard of review, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 104 L.Ed.2d 80 (1989).  Here, the Ryder plan clearly confers upon Unum discretionary authority: "[w]hen making a benefit determination

under the Summary of Benefits, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the Summary of Benefits." UACL 00414.[4] The plan further provides: "[i]n exercising its discretionary powers under the plan . . . [Unum] . . . will have the broadest discretion permissible under ERISA . . . " UACL 00389.  Accordingly, this Court should apply an abuse of discretion standard of review to Unum's decision to deny Mrs. Kehoe claim for supplemental life insurance benefits.[5]

In reviewing a plan interpretation under an abuse of discretion standard, the Court may apply a two-step analysis, first determining whether the administrator's decision was legally sound, and, if it was not, determining whether the decision was an abuse of discretion.  <u>High v. E-Systems, Inc.</u>, – F.3d –, 2006 WL 2167224, *2 (5th Cir. Aug. 3, 2006).  In answering the first question, the Court must determine if the administrator's interpretation of the plan was legally correct, considering factors such as: (1) whether

---

[4] The UACL citation refers to the administrative record, attached as an exhibit to the defendant's prior Motion to Establish Subject Matter Jurisdiction (Docket Number 25).  The administrative record is bates-stamped from UACL 00001 to UACL 00428.

[5] Other courts have used different terms to describe what is essentially the same standard.  Some courts refer to the standard as "arbitrary and capricious," or an inquiry into whether the administrator's decision was "reasonable and impartial."  The Court does not find a material difference in these terms or how they have been applied.  <u>Cf.</u> <u>Rigby v. Bayer Corp.</u>, 933 F. Supp. 628, 632-33 (E.D. Tex. 1996).

6

the administrator has given the plan a uniform construction; (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan. Wildbur v. ARCO Chem. Co. et al., 974 F.2d 631, 637-38 (5th Cir. 1992).  If the Court concludes that the administrator's interpretation of the plan is correct, the Court need not engage in the second step of the analysis. Id. at 638.

In the second step of the analysis, the Court must determine whether there was substantial evidence supporting the administrator's denial of benefits.  "Substantial evidence is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Girling Health Care, Inc. v. Shalala, 85 F.3d 211, 215 (5th Cir. 1996) (internal citations omitted).  Further, because Unum both funded and administered the plan, Unum's conflict of interest "must be weighed as a 'factor in determining whether there was an abuse of discretion.'"  Firestone, 489 U.S. at 115 (internal citations omitted).

Finally, in questions of plan interpretation, the Court's review of the administrator's decision is not limited to the administrative record, and all evidence presented by the parties may be considered.  Ramos v. Bellsouth Long Term Disability Plan et al., 2001 WL 1352319, *8 (E.D. La. Nov. 1, 2001), citing Wildbur v. ARCO Chem. Co., 974 F.2d 631, 638 (5th Cir. 1992).

B.  Application

Mrs. Kehoe contends that Unum was aware of Mr. Kehoe's cancer diagnosis, and further, that Unum was in possession of Dr. David Oubre's report, which discusses his diagnosis; thus, Mrs. Kehoe submits, Unum had evidence of insurability, as required by the plan.  Unum responds that Mr. Kehoe did not submit evidence of insurability nor did it approve Mr. Kehoe's evidence of insurability, as required by the terms of the plan.  Unum's argument, accordingly, concludes that the "doctor's reports" submitted by Mr. Kehoe prior to his death, as well as Unum's general knowledge of Mr. Kehoe's condition, are insufficient to qualify as evidence of insurability.

In determining whether Unum abused its discretion in interpreting the terms "evidence of insurability," the Court's analysis must begin with the language in the Ryder plan.  The plan provides: "Evidence of Insurability is required for any amount of insurance."  UACL 00412.  The plan defines evidence of insurability as a "statement of your . . . medical history which Unum will use to determine if you . . . [are] approved for medical coverage."  UACL 00387.  The Summary Plan Description of the Ryder plan instructs that evidence of insurability is the same as "proof of good health."  <u>See</u> Exhibit A to Supplemental Memorandum in Opposition, Rec. Docket Number 78, p. 255.  Furthermore, the Summary Plan Description provides that an applicant must prove

evidence of insurability by completing a Personal Statement of Health Form, which is available at the Ryder Benefits Service Center.[6]

Based upon the explicit language in the Plan and the Summary Description of the Plan, the Court is compelled to find that Unum did not abuse its discretion in determining that the evidence submitted by Mr. Kehoe was insufficient to qualify as "evidence of insurability." Essentially, evidence of insurability is evidence which suggests that Mr. Kehoe's health was sufficient to qualify him for additional coverage. See Summary Plan Description p. 255 (evidence of insurability is "proof of good health"); see also, Meltzer-Marcus v. Hitachi Consulting et al., 2005 WL 2420367, *7 (N.D. Ill. Sept. 30, 2005). Dr. Oubre's report does not provide documentation of Mr. Kehoe's physical condition; rather, the report is brief and is limited to Mr. Kehoe's diagnosis with metastatic prostate cancer and his diminishing health. The report details Mr. Kehoe's recent hospitalizations resulting from his condition, and

---

[6] The plaintiff has also produced a form entitled "Your Statement of Benefit Elections," which was mailed to Mr. Kehoe on or about November 25, 2003. This form provides: "Proof of Good Health is required for the following benefit(s). Please complete the Personal Health Statement that has been mailed to you and return it directly to the insurance carrier. If you have not received this form, please contact the Ryder Benefits Service Center immediately and request that one be mailed to you." See Attachment to Unum's Memorandum in Reply, Record Document 69, p. 2. Additionally, this information was readily apparent in all documents relating to the plan, including the Summary Plan of Benefits.

further, notes his indefinite release from work.  This report does not reflect on Mr. Kehoe's "good health" and cannot qualify as evidence of insurability.[7]  It is unreasonable to infer that Unum, as both insurer and claims administrator, would provide Mr. Kehoe with supplemental life insurance *following* his cancer diagnosis. See Baker v. Metro. Life Ins. Co., 364 F.3d 624, 627 (5th Cir. 2004) ("the [district] court made a common-sense observation that '[n]o fully informed disinterested person would expect an insurance company to allow a terminally ill participant to increase his life insurance coverage'").

Furthermore, as per the Summary Plan Description, the applicant for supplemental life insurance must complete a Personal Statement of Health Form to prove evidence of insurability.  See Exhibit A to Supplemental Memorandum in Opposition, Rec. Docket Number 78, p. 255.  There is no evidence in the record that Mr. Kehoe ever completed a Personal Statement of Health Form.  In fact, the plaintiff does not even claim that Mr. Kehoe completed this form.  Based upon the plan's requirement that applicants submit a Personal Statement of Health Form as evidence of insurability, Unum did not abuse its discretion in determining that the evidence submitted by Mr. Kehoe (Dr. Oubre's report and Unum's general

---

[7] Similarly, Unum's alleged general awareness of Mr. Kehoe's diagnosis is insufficient to qualify as proof of good health.  In effect, plaintiff's argument would shift the good health burden to Unum to prove Mr. Kehoe was not in good health.

awareness of Mr. Kehoe's condition) was insufficient to qualify as "evidence of insurability."[8]

Further, regardless of Unum's interpretation of "evidence of insurability," Unum did not abuse its discretion in denying Mr. Kehoe's application for benefits. The documents clearly establish that an application for increased coverage does not become effective until Unum approves the applicant's evidence of insurability. UACL 00411. Although the parties contest whether Mr. Kehoe submitted evidence of insurability, it is uncontested that Unum never approved Mr. Kehoe's evidence of insurability.[9] Because Mr. Kehoe's supplemental policy never took effect, Unum was not arbitrary and capricious in denying Mr. Kehoe's claim for supplemental benefits.

Unum did not abuse its discretion in interpreting "evidence of insurability" and determining that the evidence Mr. Kehoe submitted in support of his application for supplemental life insurance was insufficient to qualify as such evidence. Additionally, the parties do not dispute that Unum never approved Mr. Kehoe's

---

[8] Further, the Court notes that Mr. Kehoe had been informed that he needed to complete a Personal Statement of Health Form in order to qualify for supplemental life benefits. Unum mailed Mr. Kehoe a "Statement of Benefit Elections." See fn. 6, supra.

[9] Based upon the record, it is unreasonable to suggest that Unum would approve Mr. Kehoe's application. Even though Unum, as both insurer and claims administrator, had a conflict of interest, the Court does not find that Unum acted unreasonably in these circumstances.

evidence of insurability, a condition precedent to obtaining supplemental life insurance. Therefore, Unum's decision to deny supplemental life insurance coverage was not an abuse of discretion.

    Unum's interpretation of the plan provisions was correct, and the Court finds that Unum had before it substantial evidence to support its decision.  Accordingly, the defendant's Motion for Summary Judgment is GRANTED.  The plaintiff's claims against Unum are hereby dismissed.

    New Orleans, Louisiana, August 17, 2006.

    _____
    MARTIN L. C. FELDMAN
    UNITED STATES DISTRICT JUDGE